602 So.2d 864 (1992)
Jerry Wayne METTETAL
v.
STATE of Mississippi.
No. 89-KA-1235.
Supreme Court of Mississippi.
July 1, 1992.
*866 David O. Bell, Oxford, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Ass't Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
Jerry Wayne Mettetal killed Joe Cosby, a Deputy Sheriff for Panola County, on September 30, 1988, and was indicted for capital murder. Mettetal's counsel filed abundant pre-trial motions, including a motion to suppress Mettetal's statement confessing the killing. The trial court denied Mettetal's motion to suppress. After a full trial, the jury found Mettetal guilty of capital murder but was unable to agree unanimously on punishment. The court accordingly sentenced Mettetal to life imprisonment without the possibility of parole or probation. Mettetal brings this appeal alleging that the trial court erred by denying his motion to suppress statements which were taken in violation of his right to assistance of counsel and that the trial court erred by failing to remove certain potential jurors for cause. Finding no merit to Mettetal's appeal, we affirm his conviction.

I.
On September 30, 1988, 20-year-old Jerry Wayne Mettetal was being held in the Tunica County jail on charges of the murder of his grandmother. Mettetal had been arrested and charged with the killing of his grandmother in Panola County, but the Panola County jail was crowded. Sheriff Hugh Monteith of Tunica County agreed to house Mettetal temporarily at the request of Panola County Sheriff David Bryan.
While in jail, Mettetal pondered how to escape. The only instrument he could find was a toothbrush. Mettetal sharpened the end of the toothbrush by filing it on the concrete wall.
In the early morning of September 30, 1988, Deputy Sheriff Joe Cosby of Panola County travelled to the Tunica County jail to pick up Mettetal and transport him back to Panola County for a court appearance in Batesville. Cosby picked Mettetal up at 5:43 a.m. Mettetal had the toothbrush inside his pants against his skin. Cosby knew Mettetal previously. Cosby did not handcuff Mettetal and allowed him to sit in the front seat of the patrol car. In the patrol car, Mettetal pulled the toothbrush out and kept it in both hands between his legs.
On the way to Batesville, Cosby and Mettetal talked about Mettetal's family, his grandmother, his new wife, and his infant daughter.
When Cosby and Mettetal reached the north Batesville city limits, Mettetal seized an opportunity. With Cosby steering the car with his left hand and reaching to put out cigarette ashes with his right hand, Mettetal struck Cosby in the throat with the sharpened toothbrush. Cosby grabbed Mettetal's hair pulling him down, and a struggle ensued. The car ran off the left-hand side of the road. Cosby grabbed his gun. Cosby and Mettetal struggled for control of the gun. Two shots were fired. Mettetal knew at least one shot had hit Cosby. The pair continued to struggle. Another shot was fired, and Cosby fell to the seat of the car letting go of the gun. Mettetal held the gun pointed at Cosby. Cosby pleaded, "Don't do it, Jerry. Jerry, don't do it." Mettetal fired again, aiming at Cosby's chest or stomach. Mettetal noticed *867 blood all over his own leg and then ran into the nearby woods.
At about 6:30 a.m. that morning, Gene Anthony, a postal worker, found Cosby lying wounded in the squad car. Anthony called for help, and the Batesville City Police answered the call. Cosby was taken to the local hospital emergency room where medical personnel tried to revive him to no avail.
In an effort to apprehend Mettetal, Panola County Sheriff Bryan requested assistance from the canine unit from the Department of Corrections, the State Highway Patrol, the Mississippi Crime Lab, local police of several North Mississippi towns, local sheriff's offices from various North Mississippi counties, and game wardens. Law enforcement personnel spread out in every direction searching for Mettetal.
Upon leaving the crime scene, Mettetal ran to a residential area. He broke into a home and changed from the bloody clothes he was wearing into clean garments. Experts later analyzed the bloody garments left at the home and matched the blood on the garments with Cosby's blood. Mettetal made several phone calls. He tried to reach Nancy Allred, a woman with whom he was romantically involved. He only reached her grandmother, Ruby Darby. Mississippi Highway Safety Patrol Investigator Roy Wooten, who was involved in the manhunt and was familiar with Mettetal, arrived at Darby's home while Darby was on the phone with Mettetal. Mettetal had identified himself when Investigator Wooten got on the phone. Investigator Wooten asked, "Do you still have Joe's gun?" Mettetal answered, "Yes." Investigator Wooten encouraged Mettetal to give himself up before someone else got hurt. Mettetal agreed to surrender himself at the Courtland Church of Christ, south of Batesville. Investigator Wooten went to the Church of Christ and waited. Mettetal never showed up.
Mettetal then caught a ride with a painter, Cecil Johnson, to a residential section in northwestern Batesville. After an extensive manhunt the morning of September 30, Mettetal was found, still armed, near the sewage lagoon west of town by the Batesville City Police. The officers heard two shots and spotted Mettetal. Mettetal tried to run away from the officers and was shot three times. He was arrested at approximately 9:00 a.m.
Mettetal was taken to a local hospital. He was released on October 8, 1988, and transported to the Lafayette County Jail.
Lafayette County Sheriff Buddy East testified that Mettetal was taken to Sardis sometime between October 8 and October 21, 1988, to appear before a Justice Court Judge in order to have an attorney appointed. Mettetal testified that a lawyer was appointed to represent him but that they did not communicate subsequent to the appointment.
On October 21, 1988, Mettetal made a full confession to law enforcement personnel, Sheriff East and Investigator Wooten, at the Lafayette County Jail after signing a waiver of his rights.
In February, 1989, present defense counsel was appointed to represent Mettetal in the cause sub judice. A pre-trial hearing was held regarding the motion to suppress Mettetal's statements. Mettetal as well as three law enforcement officers testified. The trial court denied Mettetal's motion to suppress. The case was tried to a jury. The jury returned a guilty verdict.

II.
Mettetal argues on appeal that his right to counsel had attached and that he had made numerous requests for counsel from the time of his September 30, 1988, arrest. Mettetal alleges that his statement was given without benefit of counsel and that he was thus denied his constitutional right to assistance from counsel. We find that Mettetal was not denied his constitutional right to counsel and that his statement to law enforcement officers was appropriately admitted by the trial court.
When the voluntariness of a confession is at issue, the prosecution has the burden of offering a prima facie case of admissibility which, when rebutted by the defendant, then requires that the prosecution *868 offer all witnesses to the confession. The accused offers testimony of inducement. See, e.g., Stokes v. State, 548 So.2d 118, 121 (Miss. 1989) cert. denied, 493 U.S. 1029, 110 S.Ct. 742, 107 L.Ed.2d 759 (1990); Agee v. State, 185 So.2d 671, 673 (Miss. 1966). The accused is entitled to a preliminary hearing on admissibility. Agee, 185 So.2d at 673. And the prosecution bears the beyond-a-reasonable-doubt burden of proof. Stokes, 548 So.2d at 122.
According to the Stokes court, when the circuit court expressly or implicitly resolves the issue of admissibility of a confession against a defendant, this Court's scope of review is confined to established limits. Id. Addressing whether a confession to murder was voluntarily given, this Court stated:
This is essentially a fact-finding function. Neal v. State, 451 So.2d 743, 753 (Miss. 1984). So long as the court applies the correct legal standards, "we will not overturn a finding of fact made by a trial judge unless it be clearly erroneous." See, e.g., Woodward v. State, 533 So.2d 418, 427 (Miss. 1988); Hall v. State, 427 So.2d 957, 960 (Miss. 1983); Ratliff v. State, 317 So.2d 403, 405 (Miss. 1975); cf. Culbreath v. Johnson, 427 So.2d 705, 707-708 (Miss. 1983); Jones v. State, 461 So.2d 686, 697 (Miss. 1984). Where, on conflicting evidence, the court makes such findings, this Court generally must affirm.
Stokes, 548 So.2d at 122. Thus, the trial judge's finding below that Mettetal's statements were voluntarily given is a finding of fact that cannot be reversed unless he applied an incorrect legal standard or his order is clearly erroneous.
An accused, after expressing a desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. Edwards v. Arizona, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, reh'g denied 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981). Once the right to counsel has attached, and the accused asserts the right, he is protected from further police-initiated interrogation. Michigan v. Jackson, 475 U.S. 625, 634-636, 106 S.Ct. 1404, 1410-1411, 89 L.Ed.2d 631, 641-642 (1986). Even if an accused has procured an attorney, the accused may still waive the right to have the lawyer present during any police questioning. Nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney. Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will. See Michigan v. Harvey, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990).
This Court has found that a defendant may waive his Sixth Amendment right to counsel when he waives his Miranda rights. See Houston v. State, 531 So.2d 598, 601 (Miss. 1988).
At the suppression hearing, Mettetal testified that he repeatedly requested an attorney and that he was not provided with one. He also testified further that no one advised him of the consequences of making a statement. He specifically testified that he was coerced by Investigator Wooten who told him he would "feel better" if he made a statement. Mettetal admitted at the hearing that he had been informed of his rights on more than one occasion and that he knew he could cease the statement at any time to "get advice from a lawyer" if he wanted. Mettetal admitted that the officers did not promise him anything, did not use force, and did not threaten him. Mettetal acknowledged that he had "sent for Sheriff East". Sheriff East specifically denied that Mettetal made repeated requests for the assistance of an attorney. Sheriff East testified at the suppression hearing that if Mettetal had requested an attorney, one would have been provided. Sheriff East explained that Mettetal's statement was made of his own free will and that he did not make any requests at the time of the statement for *869 the aid of a lawyer. Investigator Wooten testified that Mettetal made the statement at his own instigation and that Mettetal never asked for an attorney. The county jailer, John Thomas, testified that Mettetal made the statements after asking for the sheriff and explaining that he wanted to tell the sheriff about the crime.
There is no indication in the record that Judge Coleman used an incorrect legal standard. The lower court conducted a preliminary hearing on admissibility pursuant to the Agee requirement. There is also no indication in the record that Judge Coleman's finding, admitting the statements as voluntarily given, was clearly erroneous. Mettetal admitted that he understood his rights, and all of his contentions (that he had made repeated requests for counsel) were specifically refuted by the three State witnesses, Sheriff East, Investigator Wooten, and Thomas. Mettetal knowingly and voluntarily waived his right to assistance of counsel during the statement to the police. This assignment of error is without merit.

III.
Mettetal asserts on appeal that he was denied a fair trial because the trial court refused to accept his challenge for cause to three veniremen. Mettetal explains that the trial court failed to remove three veniremen for cause thus requiring defense counsel to use peremptory challenges to remove them. We find that the trial court did not err by failing to remove certain potential jurors for cause.
The loss of a peremptory challenge does not constitute a violation of the constitutional right to an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use his peremptory challenges to achieve that result does not mean that the defendant was denied his constitutional rights. Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80, 90, reh'g denied 487 U.S. 1250, 109 S.Ct. 11, 101 L.Ed.2d 962 (1988).
This Court explained that a prerequisite to presentation of a claim of a denial of constitutional rights due to denial of a challenge for cause is a showing that the defendant had exhausted all of his peremptory challenges and that the incompetent juror(s) was forced to sit on the jury by the trial court's erroneous ruling. Chisolm v. State, 529 So.2d 635, 639 (Miss. 1988). Mettetal cannot make such a showing in the case at bar because he did in fact strike the veniremen peremptorily. The veniremen in question did not in fact sit on the jury. It is not error for defense counsel to be compelled into using a peremptory challenge to remove a prospective juror. This assignment of error is without merit.

IV.
No error occurred in the trial of Mettetal. His statement was given after he had freely and voluntarily waived his right to counsel, and his necessary use of three peremptory challenges to remove three veniremen was not error in light of Chisolm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.