# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 95-CA-01072 COA

CITY OF JACKSON, MISSISSIPPI                                    APPELLANT

v.

CHARLES WILLIAMSON AND BETH                                     APPELLEES
WILLIAMSON

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/95 |
| TRIAL JUDGE: | HON. HONORABLE JAMES E. GRAVES JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM A. GOWAN, JR. |
| ATTORNEYS FOR APPELLEES: | LANCE L. STEVENS |
| | RODERICK D. WARD, III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | VERDICT IN FAVOR OF PLAINTIFF, JUDGMENT GRANTED |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL - 1/27/98 |
| MOTION FOR REHEARING FILED: | 10/31/97 |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | |

BEFORE THOMAS, P.J., DIAZ, AND SOUTHWICK, JJ.

SOUTHWICK, J., FOR THE COURT:

The original opinion is withdrawn on a motion for rehearing and this modified opinion is substituted. The motion for rehearing is granted.

A jury in the Circuit Court of Hinds County returned a verdict in favor of Charles Williamson in a personal injury action which arose out of a motorcycle accident. The City of Jackson appeals on the basis of the following issues: **(1) the trial court erred in refusing to excuse a potential juror for cause; (2) a motion in limine excluding evidence that the plaintiff was not wearing a helmet was improperly granted; (3) the trial court erred in allowing the plaintiff to submit his medical**

**records to the jury under the business records exception to the hearsay rule; and (4) the trial court erred in failing to rule as a matter of law that the plaintiff was a trespasser/licensee.** On cross-appeal, the Williamsons allege that: **(1) the set-off of the settlement with the Town of Flowood was improper; and (2) the trial court erred by failing to grant additur for the loss of consortium claim of Beth Williamson.** We affirm on direct appeal, but agree that each cross-appeal issue requires us to reverse and remand for further proceedings.

## FACTS

Charles Williamson was riding his motorcycle along an access road to a sewage metering station in the Town of Flowood when he struck a cable and sustained severe injuries. The cable was erected by the City of Jackson to reduce vandalism at the metering station. While the City of Jackson owns and maintains the metering station, the access road is the property of the Town of Flowood. The City of Jackson also has access rights to the metering station for maintenance.

Charles Williamson filed a negligence action against the City of Jackson and the Town of Flowood. Beth Williamson, Charles's wife, joined in the suit claiming a loss of consortium. The Williamsons and the Town of Flowood reached a settlement in the amount of $17,500.

Following a trial in the Circuit Court of Hinds County, the jury awarded Charles Williamson $102,500, which included a fifty-five percent reduction for his comparative negligence. The jury did not award Beth Williamson anything for her loss of consortium claim.

## DISCUSSION

### 1. Failure to Excuse a Juror for Cause

On appeal, the City of Jackson asserts that the trial court committed reversible error by failing to excuse a prospective juror, John Robinson, for cause from the jury panel. Because of the trial court's refusal, the City was required to expend a peremptory challenge on Robinson. The City contends that the trial court violated its duty to insure the selection of a fair and impartial jury because of its refusal to sustain the City's challenge for cause of Robinson.

During voir dire, Robinson expressed concerns about his ability to serve impartially on the jury. Robinson stated that his son was involved in an automobile accident, and thus he had a degree of empathy toward the plight of the plaintiff. Following further questioning, Robinson stated that he could be "fair as far as his ability." The City of Jackson moved to strike Robinson for cause based upon his past experience. The trial court denied the City's request. Subsequently, the City struck Robinson from the jury panel by using its third peremptory challenge.

In a civil action before a twelve-member jury, each party may exercise four peremptory challenges. **M.R.C.P. 47(c).** Although a party may lose a peremptory challenge, it does not necessarily constitute a denial of the constitutional right to an impartial jury. The prerequisite to presentation of such a claim is a showing that "the defendant had exhausted all of his peremptory challenges and that the incompetent juror was forced to sit on the jury by the trial court's erroneous ruling." *Mettetal v. State*, 602 So. 2d 864, 869 (Miss. 1992); *Chisolm v. State*, 529 So. 2d 635, 638 (Miss. 1988). The City of Jackson cannot make such a showing here because it did peremptorily strike Robinson and

never exercised its remaining peremptory challenge.

This assignment of error is without merit.

## 2. Exclusion of Evidence

The City of Jackson's next assignment of error is that the trial court improperly granted the Williamsons' motion in limine as to Williamson's failure to wear a helmet. The City argues the evidence was relevant to show an overall disregard for safety. Furthermore, the City asserts that Williamson's failure to wear a helmet constitutes negligence per se, and thus the City was entitled to such a jury instruction.

Evidentiary rulings are within the broad discretion of the trial judge and will not be reversed absent an abuse of discretion. *Sumrall v. Mississippi Power Co.*, **693 So. 2d 359, 365 (Miss. 1997).** There is no evidence to support the City's proposition that Williamson's failure to wear a helmet proximately caused or contributed to his injuries. Although Williamson suffered severe intestinal and pelvic injuries, he did not suffer any trauma to his head. Williamson's failure to wear a helmet was not relevant, and hence the trial court was correct in excluding such evidence. *See* **M.R.E. 402.**

The City argues that Williamson's failure to show proper regard for his own safety is also evidence of a general carelessness, which if explained to the jurors might have caused them to allocate more or all of the fault to him. Had the City offered a better predicate for the evidence, the judge's exercise of discretion might more concretely have been reviewed. For example, is there reasonable expert opinion that those cyclists who fail to wear a helmet are more careless, as opposed just to being more libertarian? Based on this record, we find no abuse of discretion in excluding evidence that was of such questionable relevance.

The City also contends that Williamson's failure to wear a helmet was in violation of § 63-7-64 of the Mississippi Code and therefore constituted negligence per se. Consequently, the City maintains that the trial court should have granted an instruction informing the jury of negligence per se. However, in order for the doctrine of negligence per se to apply, a party must establish that "[1] he is a member of the class that the statute was designed to protect and that [2] the harm he suffered was the type of harm which the statute was intended to prevent." *Thomas v. McDonald*, **667 So. 2d 594, 597 (Miss. 1995**)(numbers added).

The statute was designed to increase the safety of motorcycle riders and perhaps to reduce compensation for head injuries that would be owed by those who proximately contributed to an accident. The City was not within either class. As to the second prong for proving negligence per se, the statute was designed to reduce head injuries. No such injuries were alleged. The City thus cannot establish either prong of negligence per se.

## 3. Admission of Medical Records

The City's next assignment of error is that the trial court improperly admitted Williamson's medical records into evidence. On appeal the City argues that the records should have been authenticated by a custodian of the records. That is not what was argued below.

During direct examination of Williamson, his counsel attempted to admit medical records from the

hospital. The City of Jackson objected on the grounds that the records constituted hearsay. Following a bench conference, the trial court, in an effort to clarify the objection to the plaintiff's attorney, emphasized that the City's objection was not based on authenticity and that the City conceded authenticity. The trial court overruled the City's objection and admitted the medical records into evidence.

A party cannot put a trial court judge in error on a matter which was not presented to him for decision. *Ponder v. State*, **335 So. 2d 885, 886 (Miss. 1976).** Accordingly, a party may not raise a new objection on appeal which is different from a specific objection considered and denied by the trial court. The failure to raise such an objection is deemed a waiver by the party. *Davis v. Singing River Elec. Power Ass'n*, **501 So. 2d 1128, 1130-31 (Miss. 1987).** That is all the more true when the trial judge expressly stated that his understanding of the objection was that it did include a certain argument; the objecting party made no correction at that time; on appeal that is the very point the party raises.

Authenticity is not a frivolous issue. Had the City informed the trial court that this was the basis of their objection instead of leaving uncorrected the trial court's statement that this was *not* the basis of their objection, the issue would properly have been joined for our review on appeal. On this record, however, the City waived the authenticity objection to the admission of the medical records.

## 4. Standard of Care

The trial court instructed the jury to determine whether Williamson was a public invitee or a licensee whose presence was known by the City. On appeal, the City of Jackson asserts as a threshold issue that they should not be judged by the requirements applicable to a landowner, as the City of Flowood owned this property. The City also alleges that the trial court erred in failing to rule, as a matter of law, that Williamson was a trespasser/licensee and that the construction of the cable could at most constitute negligence.

A visitor's status governs the standard of care that a landowner owes him. "An invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. A licensee is one who enters upon the property of another for his own convenience, pleasure, or benefit pursuant to the license or implied permission of the owner, whereas a trespasser is one who enters upon another's premises without license, invitation, or other right." *Skelton v. Twin County Rural Ass'n*, **611 So. 2d 931, 936 (Miss. 1992).**

A landowner owes an invitee the duty of ordinary reasonable care. *Clark v. Moore Mem'l United Methodist Church*, **538 So. 2d 760, 764 (Miss. 1989).** A less burdensome duty applies when the party is a licensee or a trespasser -- the owner of the premises must simply refrain from willfully or wantonly injuring the party. *Astleford v. Milner Enter.*, **233 So. 2d 524, 525 (Miss. 1970).** However, the supreme court has recognized an exception to the general duty owed to a licensee. A landowner is held to a higher standard when he engages in active conduct and the licensee's presence is known to him. In such a situation, the legal distinction between an invitee and a licensee has little significance and the landowner is required to use ordinary reasonable care. *Adams v. Fred's Dollar Store*, **497 So. 2d 1097, 1101 (Miss. 1986).**

In this case, the trial court instructed the jury to determine whether Williamson was an invitee or a

licensee whose presence was known by the City. If the jury found that Williamson was an invitee or that kind of licensee, the court instructed the jury to ascertain whether the City was negligent in erecting the cable across the road. That was a correct set of instructions. However, if the jury found that Williamson was not an invitee or that kind of licensee (which would mean he was a licensee whose presence was not known), the court instructed the jury to decide if the actions by the City were willful and wanton. That too was an accurate statement of the law. The jury concluded that Williamson was an invitee or a licensee whose presence was known by the City, and that the City's actions were negligent. Though that should have stopped the jury's question answering, they went on to answer that the City's conduct was willful and wanton.

The City had rights in the premises, including the rights of ingress and egress. Furthermore, the City obtained the right to construct a barricade on the property. By erecting a barrier across the access road, the City engaged in active conduct on the property. In light of these rights and this activity on the property, the City of Jackson owed the same duty to others relative to its actions as would a landowner.

The City admitted that Williamson was either a licensee or an invitee. While it is difficult to conclude that Williamson was an invitee -- this was not a public park, but was instead service property that was not open for general public use -- the jury did not stray beyond the evidence in finding that people such as Williamson were licensees whose presence was known. Consequently, a simple negligence standard was applicable to the City's conduct. The jury reasonably determined that the City had placed this cable across a previously accessible road without adequate warnings in the form of signs or sufficient reflectors or ribbons on the cable. That the jury believed that this constituted negligence was also within its prerogative.

We affirm the finding of liability.

## CROSS-APPEAL

### 1. Improper Set-Off

On cross-appeal, the Williamsons contend that the trial court used the incorrect formula to reduce the jury's award of damages by the amount of the previous settlement with Flowood.

The calculation to make in these circumstances has recently been clarified by the supreme court. *McBride v. Chevron U.S.A.*, **673 So. 2d 372, 381 (Miss. 1996)**. The court adopted the "settlement-first method," which it considered a fairer result than the "fault-first" method. Under the settlement-first approach, the settlement is deducted from the gross damages found by a jury, without any initial reduction for the portion of fault that the jury assigns to the plaintiff. That difference is then multiplied by the defendant's percentage of fault. *Id.* **at 376.** The correct formula is this:

(total damages - settlement) x (defendants' percentage of fault), not

(total damages x defendants' percentage of fault) - settlement.

In the present case, the trial court instructed the jury to determine the sum of money that would fairly and adequately compensate Williamson. The form of verdict did not have a blank to indicate that total amount. The jury was then to determine the proportion of Williamson's negligence in relation to

the negligence as a whole. Upon finding the proportion of Williamson's negligence, the jury was instructed to multiply that percentage by the sum of money that the jury found to fairly and adequately compensate Williamson. The jury was directed to subtract the result of the multiplication from the original sum of compensation for Williamson. It is only that last damage figure for which there was a blank for a dollar amount on the verdict form.

The jury returned a verdict finding that Williamson was fifty-five percent at fault for his injuries, while the City of Jackson was found to be forty-five percent at fault. The jury held that Williamson suffered $102,500 in damages. That figure represented the total damages reduced by Williamson's own negligence. Following the trial, the trial court granted the City's motion to reduce the $102,500 by the amount of $17,500, which was the amount of the settlement by the Town of Flowood. The trial court entered a judgment in favor of Williamson for $85,000. The trial court in fact used the formula that the supreme court in *McBride* said should not be used.

The settlement-first method is applicable. The jury found that Williamson's net damages amounted to $102,500, which included a fifty-five percent reduction for Williamson's negligence. To apply the settlement-first approach, we must first determine the gross damages prior to the reduction for Williamson's negligence. To reach a damages amount of $102,500, the jury would have determined a total amount of damages ($Y), and multiplied it by the City's fault (.45). That can be represented this way: $Y \times .45 = \$102,500$. Thus $Y = \$102,500 / .45$, or $227,777.78.

The parties agree that the approximate $228,000 amount must have been the original damages amount if the jury followed its instruction. More likely it was some other amount, like $225,000, and after the reduction for Williamson's negligence the resulting amount was rounded to $102,500.

Under the settlement-first approach required by *McBride,* the trial court should have deducted the settlement figure of $17,500 from the approximate $228,000 and then reduced that amount by Williamson's 55% fault.

($227,777.78-$17,500) x .45 = $94,625.

The trial court determined instead that the City should pay $85,000. We remand the judgment so that the trial court may enter a new judgment for the correct amount, subject to any party's right to object to the accuracy of our calculating -- but not to our formula.

## 2. Loss of Consortium

Beth Williamson also asserts that the trial court erred by failing to grant an additur on her claim for loss of consortium. Although the jury awarded a substantial verdict in favor of Charles Williamson, the jury did not award Beth Williamson anything on her consortium claim. Our issue, as stated by the supreme court in another case in which a jury awarded no consortium damages, is "whether the verdict is against the overwhelming weight of the evidence and credible testimony and therefore should be set aside." *Alldread v. Bailey,* **626 So. 2d 99, 101 (Miss. 1993).**

The Mississippi Code provides that "[a] married woman shall have a cause of action for loss of consortium through negligent injury to her husband." **Miss. Code Ann. § 93-3-1 (Rev. 1994)**. In an effort to preclude the possibility of double recovery, the supreme court held that a wife may not

recover for the loss of financial support by the husband, for pain and suffering of the husband, or for nursing services even if provided by the wife. ***Tribble v. Gregory*, 288 So. 2d 13, 17 (Miss. 1974).** The court concluded that the husband, and not the wife, could recover these items in a suit by him against the tortfeasor. ***Id.*** Thus, the right of recovery by the wife is limited to loss of society and companionship, conjugal rights, and physical assistance of the husband. ***Id.***

The supreme court in *Alldread* held that there is no automatic inconsistency when a jury awards damages to an injured spouse and finds no damages for a loss of consortium by the other spouse. ***Alldread,* 626 So. 2d at 103.** "Reversal occurs only where the facts presented are so overwhelming in the appellant's position that reasonable jurors could not have found for the appellee." ***Thompson Mach. Commerce Corp. v. Wallace*, 687 So. 2d 149, 151-52 (Miss. 1997).** Our issue is to determine whether the evidence here is overwhelming.

Charles Williamson testified that he was unable to perform his normal household responsibilities, and therefore his wife had to assume all of the domestic activities. Charles stated that Beth, who previously worked full-time, could only work part-time. Beth Williamson stated that she suffered a great deal following the accident. She (1) went to the hospital every day before and after work to take care of Charles's incisions. After Charles was released from the hospital, Beth stated that she had to perform the following duties: (2) change Charles's dressings, (3) bathe and help him to the bathroom, (4) change the sheets on the bed, (5) prepare the meals, (6) empty the garbage, (7) pick up limbs in the yard, and still (8) tend to the children. In addition to these responsibilities, Beth also described an incident where (9) she had to chase and catch a squirrel which entered the attic. Lastly, the Williamsons testified (10) that their sex life suffered as a result of the accident.

First, any damages that would fit under the category of "nursing services" are not recoverable by the non-injured spouse. As already discussed, that is part of the damages that may only be sought by the injured spouse. ***Tribble,* 288 So. 2d at 17.** Thus items 1, 2, 3 and arguably 4 would fall under that category.

As to the remaining damages, the Williamsons argue that their evidence is unrebutted and that therefore some damages had to be awarded. What properly went to the jury on Beth Williamson's consortium claim was her testimony that she had extra duties as a result of the accident consisting of preparation of meals, emptying the garbage, picking up limbs in the yard, tending the children, and chasing a squirrel from the attic. She also testified that she had stopped working full-time and began working part-time. When her husband was asked if that was a change resulting from the accident, he stated that he did not know when the change occurred. Based on the evidence in the record, no damages for that would have been proper. Lastly, the Williamsons testified that their sex life suffered.

The supreme court has addressed the argument that consortium testimony, which frequently is unrebutted since it concerns private household activities, must be accepted:

> Mr. Alldread would have this Court consider only the direct testimony of himself and his wife, and then accept his claim the evidence was uncontradicted. Mr. Alldread fails to consider however his and his wife's testimony on cross-examination. The jury had the opportunity to hear and weigh the elements of the consortium claim both by direct and cross-examination testimony, and soundly rejected damages allegedly proven by Mr. Alldread, as non-existent.

*Alldread*, **626 So. 2d at 103.** There was no meaningful cross-examination of Mrs. Williamson by the City. However, Mr. Williamson was cross-examined to some degree by the City regarding his testimony that he could not do any house-hold chores. He acknowledged that he reached a point at which he could perform basically all the tasks that he could before the accident, and that his return to that condition gradually occurred during his recovery. A fact question definitely was left of the length of time of the disability. To the extent Mr. Williamson's statements about not being able to perform his chores is the obverse of Mrs. Williamson's testimony that she had to assume them, the cross-examination of one witness raises questions about both. *Alldread* did not describe the cross-examination that occurred there. Presumably, cross-examination that raises doubts about some aspects of the claim may properly leave doubts about all.

The supreme court more directly discussed this question when it stated that even when "[t]here is no evidence on the issue of consortium damages except the testimony of [the spouse] herself," that the "jury was free to disbelieve her." *Id.* **at 102** (quoting *Anderson v. Mutert*, 619 S.W. 2d 941, 945 (Mo. App. 1981)).

The general description of a jury's duty with regard to "undisputed evidence" is this:

> Uncontradicted or undisputed evidence should ordinarily be taken as true by the triers of facts. More precisely, evidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible or unreasonable cannot be arbitrarily or capriciously discredited, disregarded, or rejected even though the witness is a party interested; and unless shown to be untrustworthy, is to be taken as conclusive, and binding on the triers of fact.

*Lucedale Veneer Co. v. Rogers,* **211 Miss. 613, 635, 53 So. 2d 69, 75 (1951)** (opinion on rehearing).

The stated rule has a host of qualifiers: evidence cannot be "contradicted" by "circumstances," cannot be "improbable," and cannot be "untrustworthy." Cross-examination that raises questions about any part of the testimony could be said to cause the remainder to be untrustworthy, invoking the hoary phrase *falsus in uno, falsus in omnibus,* or "false in one respect, false in all." A charge to the jury cannot be based on this reasoning because it would be an improper comment on the weight of the evidence. *Metropolitan Life Ins. Co. v. Wright,* **190 Miss. 53, 62, 199 So. 289 (1940).** Beyond the instruction issue, the underlying logic of *falsus in uno* has been criticized. *M. & A. Motor Freight Lines v. Villere,* **190 Miss. 848, 857, 1 So. 2d 788 (1941).** Regardless, if the jury has reasonable grounds to believe that a witness has knowingly made material and false statements, that at least raises credibility questions about remaining testimony that may not otherwise be doubtful.

All of this sheds light on what the supreme court means by "uncontradicted" evidence.

In examining all the consortium testimony, it is difficult to conclude that any of it was impeached in the manner required by the *Lucedale Veneer* standard. The jury properly could have wondered what length of time Mrs. Williamson had to assume her husband's household chores, and had questions about the imprecise nature of almost all of it. Even so, the core claim of consortium damage was proven by positive and unimpeached evidence, and under the quoted standard it had to be accepted. It is true that the *Alldread* court in *dicta* stated that a jury was free just to disbelieve a witness. *Alldread,* **626 So. 2d at 102.** Without a clearer and controlling statement, we read that in the context

of there needing to be a basis to disbelieve. There is heightened potential both for self-serving and for uncontradicted testimony on consortium damages. We are particularly aware of that potential when a claim can be based on decline of sexual relations, and that claim is based solely on the spouses' testimony. Yet in the past the self-interest of a witness has not been a sufficient basis just not to accept testimony. *Lucedale Veneer,* **53 So. 2d at 75.**

Mrs. Williamson had the right to recover for any proven loss of society and companionship, conjugal rights, and physical assistance of her husband. *Tribble***, 288 So. 2d at 17.** Her argument unavoidably leads to the conclusion that she was entitled to a peremptory instruction that some amount of damages had to be awarded. Granting such an instruction is perilously close to ignoring the dictates of *Alldread.* However, the proposition that seems best to express the *Alldread* rule is "that not every verdict against the non-injured spouse claiming a loss of consortium is inconsistent as a matter of law with a verdict in favor of the injured spouse." *Alldread,* **626 So. 2d at 102.** The implication is that some verdicts are inconsistent.

What we are not saying bears, well, saying. Consortium damages are not justified in every case. *Alldread* clearly establishes that. A peremptory instruction is not proper just because the only testimony is from those claiming the loss, even if no retraction on the witness stand is secured through cross-examination. In fact, the *Lucedale Veneer* description of evidence that has to be accepted is so qualified that it would be a bold step ever to grant a peremptory instruction on consortium. On these facts, we are holding that consortium damages in some amount, for the limited items of the claim that we have described, had to be awarded.

What value to give the loss of spousal assistance is initially for a jury. In other areas of damage law, if the injury is considered sufficiently minor the damages awarded can be nominal. With all deference to the plaintiffs, asking a jury to place a value on a consortium claim that consisted of picking up branches in the yard and scaring a squirrel from an attic could by some jurors be put in the nominal category. There is, of course, more than those items left in the Williamson claim.

Drawing every permissible inference from the evidence that would support the verdict, and noting that the jury alone is entitled to decide the credibility of witnesses, we find that some amount of damage for the loss of consortium had to be awarded. A trial just on that claim would be proper. The evidence may be different in a new trial: the plaintiff may have firmer evidence; the City may have more extensive cross-examination. What we have said here applies to the evidence from the first trial, and its application to the evidence at any new trial is for the circuit court to determine.

## MOTION FOR REHEARING

The City of Jackson filed a motion for rehearing asserting that as a political subdivision it is not subject to liability for interest or statutory damages on the judgment. We agree.

The supreme court addressed a similar issue in determining that an incorporated municipality was exempt from the general rule requiring than an appellant deposit court costs in order to perfect its appeal. *City of Mound Bayou v. Roy Collins Constr. Co.***, 457 So. 2d 337, 340-43 (Miss. 1984).** Even with the then-potential, now-effective voiding of judicial sovereign immunity, the court held that the "public policy underpinnings" remained to support the government's exemption from the rule requiring private litigants to pre-pay costs. *Id.* **at 340.**

Legislative-created governmental immunity has totally replaced judicial sovereign immunity. *Wells v. Panola County Bd. of Educ.*, **645 So. 2d 883, 888-889 (Miss. 1994)**. Immunity continues for governmental subdivisions except as waived by statute. **Miss. Code Ann. §§ 11-46-3 & 11-46-5 (Supp. 1997).** That is similar to the manner in which judicial sovereign immunity operated, as the court held that "no political subdivision may be required to respond in judicial proceedings except as has been expressly authorized by law." *City of Mound Bayou*, **457 So. 2d at 340.**

Neither Section 11-3-23 (15% damages) nor Section 75-17-7 (interest) of the Mississippi Code specifically refers to political subdivisions. Though *dicta,* there is a statement in *City of Mound Bayou* that under judicial sovereign immunity "statutory damages may not be assessed on appeal where a judgment against a political subdivision is affirmed." *Id.* **at 340.** The authority for the proposition was a case that interpreted the predecessor to the present statute that assesses 15% of the trial court award as damages after affirmance on appeal. *Rankin County v. Wallace,* **233 Miss. 280, 305-307, 103 So. 2d 6, 7-8 (1958),** interpreting 1942 Miss. Code § 1971 (5% of judgment), recodified 1972 Miss. Code Ann. § 11-3-23. The supreme court did not find in the statute a sufficient basis to impose this damage award against a political subdivision.

The 15% "damages" can be seen as a penalty when an appellate court determines that nothing that the trial court did requires correcting. That is a charge added to the original judgment for which specific authority is required, and we find none. On the other hand, interest is nothing more than the time-value of money. Allowing a governmental subdivision to avoid the payment of interest during the delay in satisfying a money judgment permits such a defendant to pay less after an appeal than was awarded in the trial court. Appellate rule 37 does not specifically refer to governmental bodies as being liable for interest on judgments. **M.R.A.P. 37.** However, any statute or rule that allows suit against a governmental body could be read as necessarily allowing interest on a judgment at a reasonable, non-punitive rate until paid, since that permits the damages awarded to be paid in full. Despite this view, we find that the supreme court has as recently as the 1984 *Mound Bayou* case stated that interest on a judgment is not assessable against a governmental subdivision. **457 So. 2d at 340.** We adhere to that pronouncement, but encourage its reconsideration.

The legislature may have intended to permit interest in some circumstances by stating that "no judgment against a governmental entity . . . shall include an award for . . . interest prior to judgment . . . ." **Miss Code Ann. § 11-46-15 (2) (Supp. 1997)**. It is the implication of that statement, not explicit language as required under the cited case law, that might allow post-judgment interest.

Costs of appeal may be awarded against political subdivisions. **M.R.A.P. 36(b).**

The Court's original mandate is modified to delete the statutory damages and interest award.

**THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED ON DIRECT APPEAL. THE JUDGMENT IS REVERSED AND REMANDED ON CROSS-APPEAL FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS ARE ASSESSED TO THE APPELLANT.**


**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.**