626 So.2d 99 (1993)
Robert S. ALLDREAD
v.
Thomas H. BAILEY.
No. 91-CA-0355.
Supreme Court of Mississippi.
October 21, 1993.
Roy O. Parker, Jr., Tupelo, for appellant.
James B. Floyd, III, Tupelo, for appellee.
Before HAWKINS, C.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ.
SMITH, Justice, for the court:
An automobile accident occurred in June, 1989, between Mrs. Sherry Alldread, wife of the appellant, and Thomas H. Bailey. The cause was tried in the Lee County Circuit Court on Mrs. Alldread's negligence claim and a derivative claim of Mr. Alldread, for damages for loss of consortium. The jury returned a verdict in favor of Mrs. Alldread and awarded damages of $20,000 based on Bailey's negligence in causing the accident. Simultaneously, the jury rendered a verdict denying Mr. Alldread's claim for loss of consortium damages. The trial court overruled Mr. Alldread's Motion for JNOV or, in the alternative, a New Trial. Feeling aggrieved, Mr. Alldread appeals to this Court requesting a review of whether a jury determination of liability against a defendant causing personal injuries to a wife is binding against the same defendant regarding the claim of loss of consortium by the wife's husband.

STATEMENT OF THE FACTS
At trial, the testimony indicated Mrs. Alldread operating an automobile in the inside lane of traffic, was stopped and waiting to make a left turn when she was struck from behind by an automobile driven by Bailey. Mrs. Alldread stated that she was thrown forward and backwards from the impact; her head hit the windshield and her body came back. She stated the impact was "very hard."
After the accident, Mrs. Alldread, believing she was not seriously injured, returned to work. Although her head and neck hurt, she decided to wait until after work to visit an emergency room. After an examination and x-rays, the doctor prescribed "pain pills and muscle relaxers." It was twenty-one days later before Mrs. Alldread visited a second doctor for her continued headaches and neck pains, and an additional twenty-four days passed before she returned for a second visit. She further testified that she was slowly improving and that her condition varied, depending *100 on the "tension and stress" she encountered at work.
Mrs. Alldread testified her family was "just a normal family" prior to the accident. She stated that they would go to the park together or go fishing, and she and her husband played racquetball and walked. She testified she did the majority of the household duties. After the accident, she was able to do housework, but normally did not do anything that required a lot of stooping and bending. She stated that after the accident her husband and children did most of the housework. In discussing her sexual relations, Mrs. Alldread stated that prior to the accident, she and her husband had relations two or three times a week; however, since the accident, they had sexual relations once a month or less. She stated she no longer plays racquetball.
On cross-examination, Mrs. Alldread testified that X-rays taken after the accident revealed no broken bones and no evidence of torn muscles or ligaments. No hospital stay was ever necessary. She agreed that neither physical therapy, surgery, nor absence from work was recommended, and she was not referred to a chiropractor. She admitted to a previous injury, a "bruised back," sustained in 1988 from falling out a door and onto concrete steps. She testified to experiencing headaches prior to the accident. She admitted working a second job at Hickory Farms after the accident. She blamed the decrease in frequency of sexual relations on the accident, and not aging or decreased desires. She stated she and her husband did not garden or mow their own lawn together. Mrs. Alldread stated she had not taken pain medication prescribed by a medical doctor during the past eighteen months prior to trial. She stated that she had not missed any days from work.
Mrs. Alldread visited a total of five doctors, four of whom prescribed pain pills or muscle relaxers. Dr. Forrest Tutor, neurosurgeon, prescribed a tranquilizer and a pain pill and requested she return in two weeks. However, Mrs. Alldread did not make the return visit to the doctor because she did not feel that taking tranquilizers would help her, and she had to take care of her household. Dr. Tutor, Dr. Malcolm Moore, and Dr. William Gary, testified by deposition. Their testimonies were substantially similar. Dr. Gary reported that an MRI performed four months following the accident was "normal." The diagnosis of all three doctors was that Mrs. Alldread had sustained a mild muscle strain of the neck which normally heals itself within approximately four months. Regarding Mrs. Alldread's complaint of headaches, the doctors stated they were muscle tension headaches, which can be caused by traumatic injury, but are more commonly attributable to anxiety and tension. The doctors agreed there was no evidence of a permanent injury, and none recommended surgery, physical therapy, time off from work, or chiropractic treatment.
Dr. Darrell M. Blain, D.C., testified as an expert chiropractor. He first examined Mrs. Alldread in December, 1989, approximately six months after the accident. He diagnosed Mrs. Alldread as having cervical cranial and cervical brachial syndrome, and mild fibrositis, which he attributed to muscle spasms not being treated promptly, and thereafter the "spasms end up deteriorating the areas and fibrous tissues replace normal tissue." Also, he diagnosed "grade III extension side neuralgia," or pain running down the legs and into the calf region.
Dr. Blain concluded Mrs. Alldread's injuries were caused by the accident, and he was of the opinion that she would probably suffer periodic problems for the rest of her life, in varying degrees. His records revealed he had seen Mrs. Alldread for approximately 129 office visits in a period of one year and that his reported bill for services rendered was $11,560.00. Dr. Blain felt Mrs. Alldread would require continued treatment in the years to come.
Appellant, Steve Alldread, testified to his wife's changed condition since the accident. He stated they were a "normal, happy family" who did activities together prior to the accident. He described a "dramatic change" in his wife after the accident: She was not able to do things with the children she did before, she performed very fewer domestic duties, and her personality had "changed completely." He described his prior sexual *101 relations with his wife as "very enjoyable, very pleasurable, very frequent," as opposed to their current status of "very little, if any." Mr. Alldread admitted on cross-examination, however, that about four weeks after the accident the family took a vacation to Florida.
Mr. Alldread appeals to this Court and presents one issue for discussion:
I. WHETHER THE DETERMINATION OF LIABILITY AGAINST A DEFENDANT FOR CAUSING PERSONAL INJURIES TO A WIFE IS BINDING AGAINST THE SAME DEFENDANT REGARDING THE CLAIM BY THE WIFE'S HUSBAND FOR LOSS OF CONSORTIUM.

DISCUSSION OF ISSUES AND LAW
This court clearly stated in Fitzner Pontiac-Buick-Cadillac v. Smith, 523 So.2d 324 (Miss. 1988):
Our scope of review in such contexts is as limited as it is familiar. We consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors i the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Id. at 326.
Because of the jury verdict in favor of the appellee, this Court resolves all conflicts in the evidence in his favor. This Court also draws in the appellee's favor all reasonable inferences which flow from the testimony given. City of Jackson v. Locklar, 431 So.2d 475, 477 (Miss. 1983).
Bailey disagrees with Mr. Alldread's phrasing of the issue before this Court. Bailey frames the issue as whether the jury could find for Mrs. Alldread on the liability issue, but simultaneously fail to find for Mr. Alldread, not persuaded that he suffered a "true consortium loss." The real issue for our consideration is whether the verdict is against the overwhelming weight of the evidence and credible testimony and therefore should be set aside. Alldread argues the Court should reverse and order a new trial on the issue of damages only.
Alldread argues first that "to prevent inconsistent results, if the injured party wins on the primary claim, and there is evidence of loss of consortium, then as a matter of law the spouse claiming loss of consortium should win on his or her claim." Alldread correctly states the law, that a husband may recover for personal injuries suffered by his spouse in an action for loss of consortium, and that his action is a derivative claim. However, Bailey responds that while the law is correctly stated by Alldread, he has failed to prove a crucial element of his case  damages.
Alldread responds that he presented such proof, but that here, two inconsistent verdicts were rendered, one stating that Bailey caused the accident, and the other stating that Bailey did not cause the accident resulting in Mr. Alldread's loss of consortium injuries. Obviously, the real issue is not whether Bailey caused the accident, as the verdict in favor of Mrs. Alldread answered that question in the affirmative. The real issue is whether that verdict forces the jury to find in favor of Mr. Alldread on the issue of loss of consortium.
This Court dealt with a similar case in Harold Matkins, et al. v. Maurice Lee, 491 So.2d 866 (Miss. 1986). In that case, an automobile driver and passenger injured in a collision with a truck brought an action against the truck driver. The automobile driver's husband sued for loss of consortium. The truck driver admitted liability, and the jury returned verdicts of $5,271.75 for the automobile driver, and $3,400 for the passenger, and nothing for the automobile driver's husband. This Court, in an opinion by Chief Justice Harry Walker, upheld the verdict of $.00 for Harold Matkins, who sued for loss of consortium resulting from the injuries to his wife. The Court found "[t]he question of loss of consortium was fairly presented to the *102 jury and was resolved against Harold Matkins". Id. at 868.
Other jurisdictions have examined this question, without uniformity we might add. Representative of cases agreeing with appellant's position in the case sub judice is the Missouri case of Pietrowski v. Mykins, 498 S.W.2d 572 (Mo. App. 1973). The jury's verdict was for the injured spouse on the issue of liability, but against the other spouse on the claim for loss of consortium. The Court held such a verdict must be set aside as inconsistent. Applying this reasoning to the case at bar, it would seem there is merit to Mr. Alldread's argument that an inconsistent verdict was returned with respect to his claim for loss of consortium.
However, upon further review it becomes clear that, even in states where there is authority supporting appellant's argument, the courts have held that not every verdict against the non-injured spouse claiming a loss of consortium is inconsistent as a matter of law with a verdict in favor of the injured spouse. In Everette Anderson, et al., v. George W. Mutert, et al., 619 S.W.2d 941 (Mo. App. 1981), the court considered another case where the jury found for the injured husband on the personal injury claim, but against the wife on the claim for loss of consortium. On appeal the court stated:
There is also firm support, however, for the principle that a reviewing court must defer to the trier of fact in determining the credibility of witnesses, even when their testimony is uncontradicted.
A cause of action accruing to a party for loss of consortium is separate and distinct from that party's spouse suffering personal injury. The spouse seeking compensation for loss of consortium must show that he or she suffered damages arising out of the other's injuries (cite omitted). The verdict for Mr. Anderson and against Mrs. Anderson with respect to the claim against Mutert was consistent with a jury finding that, although Mr. Anderson was injured as a result of Mutert's negligence, Mrs. Anderson suffered no damages as a result thereof. There was no evidence on the issue of consortium damages except the testimony of Mrs. Anderson herself. The jury was free to disbelieve her.
Id. at 945.
A similar result followed in Gurley et al. v. Hinson et al., 194 Ga. App. 673, 391 S.E.2d 483 (1990), also involving claims arising out of an automobile accident. The jury found for the injured wife but against her husband on the loss of consortium claim. In affirming, the court noted:
This court does recognize the rule that a consortium action is derivative and when it is tried along with the primary action, a jury cannot render inconsistent verdicts. However, in view of the evidence produced at trial, we find that the verdicts rendered are not inconsistent. The evidence on the consortium issue was not uncontradicted, and the jurors were free to evaluate the witnesses, the testimony and the evidence produced to determine if the appellant husband was damaged due to the loss of consortium. In the negligence action, the jury awarded the wife a small amount over the documented special damages. The jury could have determined that the appellant wife's injuries were such that her husband suffered no compensable damage for loss of consortium.
Id. at 486.
In the case sub judice, both the issue of the extent of Mrs. Alldread's injuries and the extent of damages vicariously sustained by Mr. Alldread, if any, were contested at trial. Mrs. Alldread alleged damages of $150,000 at trial. The jury only awarded $20,000 in favor of Mrs. Alldread, and found against Mr. Alldread as to any damages sustained. This award of damages to Mrs. Alldread barely covered her actual damages in medical and chiropractic bills. This case is very similar to Gurley, both factually and legally. This case involved a jury issue, and one in which the jury's decision was manifestly right. As to damages, Mrs. Alldread's case was weak, but Mr. Alldread's case was extremely weak.
Mrs. Alldread sustained a mild neck strain, a non-permanent injury, for which her physician recommended no hospitalization, surgery, physical therapy or chiropractic treatment. Three medical doctors, one an expert neurosurgeon, testified to the above findings. *103 Mrs. Alldread admitted she was slowly improving, and that her condition varied depending upon the type of day at work she has had, including "tension and stress." She had not missed a single day of work since the accident, even while working two jobs simultaneously for a short period of time after the accident. She admitted to a previous injury, a bruised back, and previous headaches prior to the accident. She testified she had discontinued medical treatments, and had not seen a doctor for a year and a half prior to the trial. Regarding sexual frequency, or the lack thereof, it is always difficult to prove the validity of this element of a claim for loss of consortium. One way for the jury to assess this situation, however, is to examine the marriage for stability. This jury heard testimony of some serious disagreements between the parties over the years, one such incident resulting in Mr. Alldread leaving the home and spending the night in a motel.
Dr. Darrell M. Blain, a chiropractor, saw Mrs. Alldread 129 times during the course of a year, charging fees amounting to $11,560.00. His findings completely contradicted those of the medical doctors. It was his opinion that Mrs. Alldread would continue, in the foreseeable future, to experience problems necessitating continued treatment.
Mr. Alldread would have this Court consider only the direct testimony of himself and his wife, and then accept his claim the evidence was uncontradicted. Mr. Alldread fails to consider however his and his wife's testimony on cross-examination. The jury had the opportunity to hear and weigh the elements of the consortium claim both by direct and cross-examination testimony, and soundly rejected damages allegedly proven by Mr. Alldread, as non-existent.
This Court must assume that the jury drew every permissible inference from the evidence offered in favor of the appellee. Burnham v. Tabb, 508 So.2d 1072, 1077 (Miss. 1987). Alldread's argument of uncontradicted evidence is flawed, because the evidence in this case was not uncontradicted. The jury, after assessing the weight of the evidence and considering the witness's testimony, was unconvinced that Mr. Alldread had proven damages in his claim for consortium. As the Court stated in Anderson v. Mutert, "[t]o rule for plaintiffs on this issue would be, in essence, to direct a verdict for them on a question that we believe rightly went to the jury." 619 S.W.2d at 946. We find no merit to this issue.

CONCLUSION
Mr. Alldread would have this Court believe that for every accident there should be a monetary recovery. The law provides instead that for every award for damages, the plaintiff must prove some loss or damages. The jury was unconvinced that Mr. Alldread suffered any loss of consortium arising out of his wife's injury and therefore returned a verdict against him, as they are permitted to do. We hold there is no inconsistency in the jury's verdict under the particular facts of this case.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.