749 So.2d 1254 (2000)
AMERICAN NATIONAL INSURANCE COMPANY d/b/a Edgewater Mall, Appellant,
v.
Karen L. HOGUE and Fred Hogue, Appellees.
No. 1998-CA-01273-COA.
Court of Appeals of Mississippi.
January 18, 2000.
*1257 Scott Derrick Smith, Jackson, Attorney for Appellant.
Albert Lionel Necaise, Gulfport, Attorney for Appellees.
BEFORE SOUTHWICK, P.J., LEE, AND PAYNE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. Karen and Fred Hogue sought damages arising from injuries Mrs. Hogue suffered while a business invitee on premises owned by American National Insurance Company. After a jury verdict for Mrs. Hogue and an additur for Mr. Hogue, American National appeals. It is alleged that the evidence does not support the verdict, that compilations of police records should not have been admitted into evidence, and that the additur to Fred Hogue was erroneous. The Hogues also appeal, saying that each is entitled to additional compensation. We affirm on both direct and cross appeal.

FACTS
¶ 2. Karen Hogue and her daughter were shopping at Edgewater Mall in Biloxi, Mississippi on December 2, 1992. Edgewater Mall is owned by the appellant, American National Insurance Company. The parking lot was crowded when Mrs. Hogue parked her van, as one of the stores was holding a promotional sale for the Christmas season.
¶ 3. Shortly before noon, Mrs. Hogue went alone to her vehicle to drop off some packages. While at the van, she was accosted by an unidentified male. The assailant, who was never identified nor apprehended for this crime, grabbed Mrs. Hogue around the neck and began choking her. Mrs. Hogue screamed until the man covered her mouth and threw her to the ground. She continued to resist. Her assailant eventually forced her into her van where he continued beating and choking her. She began to bleed from the nose and mouth and apparently briefly lost consciousness.
¶ 4. The attack was reported to Mall security. Mall security guard Robert Wren received a report about a "domestic disturbance" in the parking lot by means of his pager. Wren was one of three security guards on duty at the time and the only guard in the parking lot. Wren was patrolling the parking lot in the security vehicle, which had a light bar attached to the roof.
¶ 5. The heavy holiday traffic around the mall hindered Wren's response to the call, and it took approximately five minutes for him to arrive at the proper section of the parking lot. Once there, Wren was told by a shopper that "a man was beating on a woman in the parking lot" and that the altercation was taking place near a brown or tan colored van. Wren drove down one of the parking lot rows and located a van matching the description given to him by the shopper.
¶ 6. Wren testified that he could not see into the van clearly, but he saw a man kneeling on the floor of the van. Wren parked the security vehicle behind the van and attempted to determine what was happening. After confronting the man, Wren testified that the man held a knife out the van door and told him to get away. Wren then called for assistance from the other security guards, got into the security vehicle and left the scene to find his back-up.
*1258 ¶ 7. After Wren left the scene, the assailant forced Mrs. Hogue into the driver's seat of the van, threatened her with the knife and ordered her to drive away from the mall. Mrs. Hogue began to resist again and eventually was able to leap from the moving vehicle before it left the mall area. Mrs. Hogue suffered injuries to her head, face and mouth as well as bruises around her neck. She was treated and released from the emergency room the same day. She also was treated by her family physician for these injuries and by a psychologist for emotional trauma.
¶ 8. Mrs. Hogue filed suit against American National seeking damages for the injuries caused by this attack. Mr. Hogue joined in the complaint seeking damages for loss of consortium. After a five day trial, the jury returned a verdict in favor of the Hogues, assessing the wife's damages at $30,000 and the husband's damages at zero. The Hogues filed post-trial motions for additurs. The court granted the husband's motion and awarded $10,000. Mrs. Hogue's motion was denied. The Hogues appeal the amount of one additur and the denial of the other. American National also appeals.

DISCUSSION

I. A verdict in favor of American National should have been granted
¶ 9. American National's separate issues attacking the sufficiency of evidence will be considered together. A jury's verdict based on proper evidence and instruction occupies an especially exalted position in our court system. We will not render a verdict contrary to it short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury did. Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997). Such action on our part removes the case from the previous and any future jury. It does not matter on appeal whether the trial court action that forms the complaint is the denial of a motion for a directed verdict, for a peremptory instruction, or for a judgment notwithstanding the verdict. The required appellate showing is the same.
¶ 10. In order to ascertain the liability of American National, it is necessary to determine the status of the injured party, the duty owed by American National based on Mrs. Hogue's particular status, and whether American National breached its duty of care to Mrs. Hogue. See Little v. Bell, 719 So.2d 757, 760 (Miss.1998).
¶ 11. Mrs. Hogue was an invitee of American National as she "went upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." Hoffman, 358 So.2d at 1011. A landowner owes an invitee the duty to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not plain and open to view. Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 778 (Miss.1992). Included in that duty is the exercise of reasonable care to protect invitees from criminal attacks. Lyle v. Mladinich, 584 So.2d 397, 399 (Miss.1991).
¶ 12. American National argues that security functions had been delegated to an independent company known as AREM. However, a landowner cannot "delegate this responsibility to a third person in such a manner as to be relieved of liability for a violation of its duty...." D.L. Fair Lumber Co. v. Weems, 196 Miss. 201, 218, 16 So.2d 770, 772 (1944). American National cannot escape liability because of its contract with ANREM.
¶ 13. Next, if the dangerous "situation was created by someone not associated with the operation of the [mall], the plaintiff must produce evidence demonstrating that the operator had actual or constructive knowledge of the condition." Downs v. Choo, 656 So.2d 84, 86 (Miss. 1995). The Hogues introduced a compilation of calls received by the Biloxi Police *1259 Department from the mall for the years 1990, 1991 and 1992. The supreme court has relied on the pre-tort overall pattern of criminal activity that occurred in the general vicinity of the defendant's business premises, as well as the frequency of criminal activity on the premises. Lyle, 584 So.2d at 399; Crain v. Cleveland Lodge 1532, Order of Moose, Inc., 641 So.2d 1186, 1189-90 (Miss.1994).
¶ 14. The compilations were limited to crimes against persons and certain property crimes, but did not include such offenses as shoplifting. The compilations indicated that there were between seventy-one and seventy-nine calls made from the mall to the Biloxi Police Department annually. Although these compilations were records of calls made and not necessarily crimes committed, this evidence created a jury question of whether American National was on notice that assaults were occurring. True, the calls did not directly indicate knowledge by the Mall since the evidence was of contacts with the police department. The evidence at least created a prima facie case that the owner should have been aware of these reports. Foreseeability and breach of duty are issues to be decided by the finder of fact once sufficient evidence is presented. Lyle, 584 So.2d at 400. This evidence raised the issue.
¶ 15. American National had three security guards on duty at the time Mrs. Hogue was attacked. One of these guards was responsible for patrolling the approximately 3,000 parking spaces found in various parking lots surrounding the mall. The other guards were stationed inside the Mall. Each party presented expert testimony on the sufficiency or insufficiency of the patrol. The jury also heard extensive testimony concerning the adequacy of the training received by Robert Wren, the responding security guard. Finally, the jury heard expert testimony about the procedures used by the security guards to handle situations like the one here.
¶ 16. This contested evidence of foreseeability and of reasonableness of the safety procedures taken, was of "such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions," and accordingly the jury verdict should be upheld. Junior Food Stores, Inc. v. Rice, 671 So.2d 67, 76 (Miss.1996). American National had taken significant steps to protect its patrons and is not the guarantor of the safety of those who legally come onto its property. Lyle, 584 So.2d at 398. Nonetheless, there was evidence upon which jurors could have relied, and apparently did, that despite the validity of what has just been noted, American National reasonably should have done more to anticipate the hazard of assaultive conduct.

II. A new trial should have been granted
¶ 17. In considering a motion for a new trial, the supreme court has held that "the grant or denial of a new trial has always been within the sound discretion of the trial judge, and absent an abuse of discretion, this Court is without the power to disturb such a determination." American Fire Protection, Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995). No new trial should be granted unless the "verdict is against the overwhelming weight of the evidence or is contrary to law." Junior Foods, 671 So.2d at 76.
¶ 18. As has already been reviewed, each party presented evidence and extensive expert testimony over the course of five days. The testimony and evidence were in conflict and created a sufficient factual question to allow the jury to reach the verdict that it did. Therefore, the trial judge did not abuse his discretion in denying American National's motion for a new trial.

III. Admitting compilations of police records into evidence
¶ 19. American National argues that the previously mentioned compilations of police records were inadmissible. *1260 These records summarized calls received by the Biloxi Police Department originating from Edgewater Mall for the years 1990, 1991 and 1992. For example, the 1990 compilation was entitled "Edgewater Mall." It listed twenty-one categories of crimes, from assault upon a minor to theft/ purse snatching. The number of reported offenses in each category was also shown, such as thirteen auto thefts, two strong arm robberies and one robbery with a knife, one rape, and two assaults with injuries. A similar document was introduced for reported offenses in 1991 and in 1992.
¶ 20. A trial judge's discretion regarding the admission of evidence is broad.
The admissibility of evidence rests within the discretion of the trial court. However, this Court must also determine whether the trial court employed the proper legal standard in its fact findings governing the evidence admissibility. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the Court applies a substantially broader standard of review. However, a denial of a substantial right ... must have been affected by the court's evidentiary ruling. Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal would be appropriate only when an abuse of discretion resulting in prejudice... occurs.
Young v. City of Brookhaven, 693 So.2d 1355, 1358 (Miss.1997) (quoting Peterson v. State, 671 So.2d 647, 655-56 (Miss.1996) (citations omitted)).
¶ 21. American National argues that the summary evidence found in the compilations was not admissible because it failed to show the existence of a dangerous condition, the owner's knowledge of the condition, and a substantial similarity with what occurred to Mrs. Hogue. One case relied upon was an motor vehicle accident in which the underside of a railroad overpass was struck by a tractor-trailer rig. Parmes v. Illinois Cent. Gulf R.R., 440 So.2d 261 (Miss.1983). The court stated that evidence of other accidents was admissible only to show that a dangerous condition existed and was known to the railroad. Id. at 264. In a similar suit involving a railroad and a motor vehicle, Parmes and its requirements were discussed at some length. Mitcham v. Illinois Cent. Gulf R.R. Co., 515 So.2d 852, 855-56 (Miss.1987). The point made was that evidence of other accidents is inadmissible unless the conditions of the premises that led to the earlier accidents remained essentially unchanged until the accident later at issue, and that the circumstances of the two events were substantially similar. Id. at 856.
¶ 22. This premises owner would have us require that an attack almost identical to the one on Mrs. Hogue had previously occurred. Among the necessary details at least implied by American National is that proof be introduced that a car-jacking with a kidnapped victim had earlier occurred. However, the supreme court has held evidence competent to support liability for a kidnapping, car theft, and beating if it showed that crimes against the person had previously occurred on the premises. Lyle, 584 So.2d at 399. The key is whether the premises owner was on notice of a reasonable risk of assaults on his patrons in the parking lot. The rule of reason is not offense-specific, e.g., no liability to the kidnapped owner of a car until after the first kidnapping; then no liability to a third person hit intentionally by a fleeing felon in a stolen car with a kidnapped owner until after the first such third-person injury. We find that the evidence raised an issue of foreseeability of assaultive conduct in this parking lot. American National had provided some protections, and a jury could have found those actions to have been adequate. In this case, the jury found the opposite. That was within the discretion given to the fact-finder on this contested evidence.
*1261 ¶ 23. American National also asserts that the prejudicial effect of the compilations outweighed their probative value, thereby violating M.R.E. 403. At the heart of the argument is the fact that the compilations were merely a record of calls made from the mall. American National asserts that because there was no evidence of the result of these calls, such as incident reports, arrest records or the like, the jury was mislead into believing that an atmosphere of violence existed at the mall when in fact some of the calls may have been "false alarms."
¶ 24. The trial judge addressed these concerns, however, when he limited the compilations. The judge excluded non-relevant calls such as reports of shoplifting, thefts and forged prescriptions. The trial judge also had the parties agree on a stipulation that these compilations were merely lists of calls made from any business at the mall. The purpose of the stipulation was to limit the impact of the compilations and to inform the jury fully of the relevance of the exhibit. Importantly, the jury was informed that the mere fact that a call was made did not necessarily mean that a crime had been committed and that mall security had been informed of the call. We find this to be sufficient to limit any prejudicial effect the compilations may have created. Foreseeability becomes an issue for reasonable jurors properly instructed to resolve.
¶ 25. Finally, American National argues that the compilations were inadmissible because the underlying material from which the compilations were made were not produced.
The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.
M.R.E. 1006. At trial, American National initially objected to the exhibits in part because the underlying reports on the calls did not exist. It is unclear to this Court the exact origin of these numerical summaries. However, after lengthy skirmishing at trial, this stipulation was entered:
[If the Biloxi Police Department records custodians were called, they] would testify that Exhibits 8, 29, 30 are a list of calls received from any and all businesses located at the Edgewater Mall Shopping Center to the Biloxi Police Department during the years of 1990, 1991 and 1992. This does not include any shoplifting cases that may have been reported from the Edgewater Mall during those three years.
The effect of this stipulation was to remove the purpose of Rule 1006's requirement of providing the documents supporting a summary. The arguments over the significance of the reports of offenses were made, and they did not focus on questions regarding whether the summary accurately reflected the actual records at the police department.
We find no Rule 1006 issue to have remained on appeal.

IV. The motions for additur
¶ 26. Both American National and Fred Hogue appeal the trial court's award of a $10,000 additur on Mr. Hogue's loss of consortium claim. One believes it too large, the other too small. In addition, Karen Hogue claims that the trial court erred in denying her motion for an additur.
¶ 27. Whether to grant an additur is within the trial court's reasonable exercise of discretion. We decide whether discretion was abused, not whether we would have granted or denied in the first instance. Our standard of review is limited to whether there was an abuse of discretion. Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992). Awards set by the jury are not advisory. *1262 Generally the jury's decision will be upheld unless it was so unreasonable as to be outrageous. Maddox v. Muirhead, 738 So.2d 742(¶ 5) (Miss.1999).
¶ 28. The court can award an additur upon a finding that (1) the trier of fact was influenced by bias, prejudice or passion, or (2) the damages awarded were contrary to the overwhelming weight of credible evidence. Rodgers, 611 So.2d at 944. An additur should never be granted except with great caution, for an additur represents a judicial incursion into the traditional habitat of the jury. Gibbs v. Banks, 527 So.2d 658, 659 (Miss.1988). Even so, upon Mr. Hogue's motion for an additur the trial court examined the absence of any award and determined that was against the overwhelming weight of the evidence. The court granted Mr. Hogue a $10,000 additur.
¶ 29. The question quite simply is whether based on the evidence presented the jury had to award damages for a loss of consortium. A spouse's right of recovery on this claim is limited to loss of society and companionship, interference with conjugal rights and providing previously unnecessary physical assistance. Tribble v. Gregory, 288 So.2d 13, 17 (Miss. 1974). When the jury awarded no loss of consortium damages, they rejected as either irrelevant or unconvincing the following testimony concerning Fred Hogue's damages:
♦ Following the attack on Mrs. Hogue, her husband stayed with her continually for the next week and was required to have a substitute teacher come in for five days at a cost of approximately $619 in lost wages.
♦ After the attack, Mrs. Hogue required someone to stay with her at all times; i.e., she was afraid to be alone, and most of the time her husband looked after her.
♦ If Mr. Hogue needed to get up during the night, he would have to wake Mrs. Hogue so that she would not become terrified when he came back.
♦ Prior to the attack Mrs. Hogue was responsible for grocery shopping, but now she is unable to do this and the responsibility falls on her husband.
♦ Mr. Hogue became what he called "hypersensitive" to his wife's needs. He must take active steps to prevent her from being placed in uncomfortable and unfamiliar situations.
♦ Mr. Hogue testified that the attack did not change what they do because the Hogues have always done activities together.
♦ There was testimony that Mr. Hogue retired in order "to be able to be with Mrs. Hogue instead of spending a lot of time after school late and on trips and things like that, so that they could be together. Although he did have sufficient time in to retire." He still performed some part-time teaching at D'Iberville Middle School during the first three periods of the day.
♦ Mrs. Hogue's condition played a role in Mr. Hogue's decision to retire, but apparently was not the sole reason.
This is the only testimony concerning Mr. Hogue's damages, all given during direct examination. There was no cross-examination concerning his loss of consortium claim, nor was there redirect.
¶ 30. The supreme court has addressed the argument that consortium testimony, which frequently is unrebutted since it concerns private household activities, must be accepted:
Mr. Alldread would have this Court consider only the direct testimony of himself and his wife, and then accept his claim the evidence was uncontradicted. Mr. Alldread fails to consider however his and his wife's testimony on cross-examination. The jury had the opportunity to hear and weigh the elements of the consortium claim both by direct and cross-examination testimony, and soundly *1263 rejected damages allegedly proven by Mr. Alldread, as non-existent.
Alldread v. Bailey, 626 So.2d 99, 103 (Miss.1993). Alldread did not describe the cross-examination that occurred there. Presumably, cross-examination that raises doubts about some aspects of the claim may properly leave doubts about the remainder. Here, though, no meaningful cross-examination occurred at all.
¶ 31. The supreme court more directly discussed this question when it stated that even when "[t]here is no evidence on the issue of consortium damages except the testimony of [the spouse] herself," that the "jury was free to disbelieve her." Id. at 102 (quoting Anderson v. Mutert, 619 S.W.2d 941, 945 (Mo.App.1981)).
¶ 32. The general description of a jury's duty with regard to "undisputed evidence" is this:
Uncontradicted or undisputed evidence should ordinarily be taken as true by the triers of facts. More precisely, evidence which is not contradicted by positive testimony or circumstances, and is not inherently improbable, incredible or unreasonable cannot be arbitrarily or capriciously discredited, disregarded, or rejected even though the witness is a party interested; and unless shown to be untrustworthy, is to be taken as conclusive, and binding on the triers of fact.
Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 635, 53 So.2d 69, 75 (1951) (opinion on rehearing).
¶ 33. The stated rule has a host of qualifiers: evidence cannot be "contradicted" by "circumstances," cannot be "improbable," and cannot be "untrustworthy." Cross-examination that raises questions about any part of the testimony could be said to cause the remainder to be untrustworthy, invoking the hoary phrase falsus in uno, falsus in omnibus, or "false in one respect, false in all." A charge to the jury cannot be based on this reasoning because it would be an improper comment on the weight of the evidence. Metropolitan Life Ins. Co. v. Wright, 190 Miss. 53, 62, 199 So. 289 (1940). Beyond the instruction issue, the underlying logic of falsus in uno has been criticized. M. & A. Motor Freight Lines v. Villere, 190 Miss. 848, 857, 1 So.2d 788 (1941). Regardless, if the jury has reasonable grounds to believe that a witness has knowingly made material and false statements, that at least raises credibility questions about remaining testimony that may not otherwise be doubtful.
¶ 34. All of this sheds light on what the supreme court means by "uncontradicted" evidence.
¶ 35. In examining all the consortium testimony, it is difficult to conclude that any of it was impeached in the manner required by the Lucedale Veneer standard. The testimony, even if not impeached, still must relate to "loss of society and companionship, conjugal rights and physical assistance of the injured spouse." Tribble, 288 So.2d at 17. The testimony dealt with Mr. Hogue's newly created need to be with Mrs. Hogue for substantial periods, the increased household responsibilities, and his need to be alert to situations that would renew her emotional stress. Each of these fit the definition of consortium damages.
¶ 36. The jury properly could have wondered about the significance of some of the extra obligations, and whether Mr. Hogue's retirement was directly and primarily related to his wife's condition. Still, the core claim of consortium damage was proven by positive and unimpeached evidence. Under the quoted standard it had to be accepted. It is true that the Alldread court in dicta stated that a jury was free just to disbelieve a witness. Alldread, 626 So.2d at 102. Without a clearer and controlling statement, we read that in the context of there needing to be a basis to disbelieve even if only some inherent implausibility.
¶ 37. There is heightened potential both for self-serving and for uncontradicted testimony on consortium damages. Yet in *1264 the past the self-interest of a witness has not been a sufficient basis just not to accept testimony. Lucedale Veneer, 53 So.2d at 75.
¶ 38. Mr. Hogue had the right to recover for any proven loss of consortium That finding unavoidably leads to the conclusion that he was entitled to a peremptory instruction that some amount of damages had to be awarded. Granting such an instruction is perilously close to ignoring the dictates of Alldread. However, the proposition that seems best to express the Alldread rule is "that not every verdict against the non-injured spouse claiming a loss of consortium is inconsistent as a matter of law with a verdict in favor of the injured spouse." Alldread, 626 So.2d at 102. The implication is that some verdicts are inconsistent.
¶ 39. What we are not saying bears saying. Consortium damages are not justified in every case. Alldread establishes that. A peremptory instruction is not proper just because the only testimony is from those claiming the loss, even if no retraction on the witness stand is secured through cross-examination. In fact, the Lucedale Veneer description of evidence that has to be accepted is so qualified that it would be a bold step ever to grant a peremptory instruction on consortium. On these facts, we are holding that consortium damages in some amount, for the limited items of the claim that we have described, had to be awarded.
¶ 40. What value to give the loss of spousal assistance is initially for a jury. In other areas of damage calculations, if the injury is considered sufficiently minor the damages awarded can be nominal. Drawing every permissible inference from the evidence that would support the verdict, and noting that the jury alone is entitled to decide the credibility of witnesses, we find that some amount of damage for the loss of consortium had to be awarded. The trial judge properly exercised his discretion and concluded that unimpeached evidence required an award. The amount then falls within the trial judge's reasonable discretion.
¶ 41. Mr. Hogue's contention that the award was insufficient faces the same hurdle as American National's view that it was too high. We cannot say that the judge abused his discretion in awarding $10,000. This was one-third of the verdict awarded to Mrs. Hogue, and Mr. Hogue was unable to quantify the damages he suffered. Even so, the additur remedied the jury's deficiency and was neither so high nor too low as to shock the conscience.
¶ 42. Mrs. Hogue contends that the trial court's denial of her motion for her own additur was an abuse of discretion. Mrs. Hogue presented evidence that she incurred less than $10,000 in medical care costs. The jury award of over three times the actual damages was within its discretion as compensation for pain and suffering. The award is not "so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous." Maddox, 738 So.2d at 743 (¶ 4). Accordingly, the trial court's decision to deny Mrs. Hogue's motion was not an abuse of discretion.
¶ 43. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT. STATUTORY DAMAGES AND INTEREST ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.
DIAZ, J., CONCURS IN RESULT ONLY.
THOMAS, J., NOT PARTICIPATING.