IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-60661
Summary Calendar

_____


NEDDA TILLMAN; KEITH TILLMAN,

Plaintiffs-Appellants,

versus

WENDY'S INTERNATIONAL, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Mississippi, Jackson
USDC No. 3:99-CV-143-BN
_____
March 13, 2001

Before JOLLY, SMITH, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Nedda Tillman was assaulted by a vagrant while eating lunch in a Wendy's restaurant in Jackson, Mississippi. Mrs. Tillman and her husband sued the restaurant chain, alleging that Wendy's should have foreseen the risk of assault on customers by third persons. The district court granted summary judgment for Wendy's. For the reasons set forth below, we affirm.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

On April 1, 1997, at approximately two o'clock on a weekday afternoon, Nedda Tillman stopped for lunch at a Wendy's restaurant in Jackson, Mississippi. Mrs. Tillman sat in a dining area on the east side of building that was not readily observable by restaurant employees. As she was eating, a vagrant entered the restaurant by a side door, struck her on the head with a concrete block, and stole her purse.

According to Tillman, the restaurant's policy of locking this door after 5:00 p.m. suggests that the restaurant was concerned about customer safety. Jackson police officers had been called to the restaurant nine times during the prior three years to investigate minor complaints, such as vagrants harassing customers. There were no reports of assault, robbery, or other violent crime on the restaurant's premises. In the general vicinity of the restaurant, however, approximately twenty violent crimes had been reported in the five years prior to the assault on Mrs. Tillman.

The Tillmans filed a complaint against Wendy's International, Inc. in January 1999, seeking $3 million in actual and punitive damages. The Tillmans argued that the assault was reasonably foreseeable because of the high crime rate in the area. Wendy's filed a motion for summary judgment, which the district court granted in September 2000. This appeal followed.

II

A

This court reviews a district court's grant of summary judgment *de novo*, applying the same substantive test set forth in Federal Rule of Civil Procedure 56. Horton v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999).

Contrary to the Tillmans' suggestion, negligence actions are not governed by a more lenient summary judgment standard. As this court has emphasized,

> summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." . . . Our cases have sometimes stated in dicta that summary judgment is generally not appropriate in certain types of cases, such as products liability or negligence. That dicta is essentially empty chatter, however. . . . [W]e reject any suggestion that the appropriateness of summary judgment can be determined by such case classification.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 & n.14 (5th Cir. 1994)(en banc)(citations omitted); see also Stearns Airport Equip. Co. v. FMC Corp., 170 F.3d 518, 521 (5th Cir. 1999)("We no longer maintain that summary judgment is especially disfavored in categories of cases.").

Furthermore, while the court may not weigh the evidence or resolve factual disputes, the court is obligated to determine whether facts are material. A fact is material only if it might affect the outcome of the suit under the applicable substantive law, assuming that any genuine dispute over that fact is resolved favorably to the nonmovant. See Peavy v. WFAA-TV, Inc., 221 F.3d

3

158, 167 (5th Cir. 2000); <u>Willis v. Roche Biomedical Laboratories</u>, 61 F.3d 313, 315 (5th Cir. 1995)("Only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment.").

B

Under Mississippi premises liability law, business owners have a legal "duty to protect invitees from foreseeable attacks by third persons." <u>Crain v. Cleveland Lodge 1532, Order of Moose, Inc.</u>, 641 So.2d 1186, 1192 (Miss. 1994); <u>see also</u> <u>Whitehead v. Food Max of Miss., Inc.</u>, 163 F.3d 265, 271-72 (5th Cir. 1998). The issue on appeal is whether the criminal assault on Mrs. Tillman was reasonably foreseeable and, thus, whether Wendy's had a duty to protect her from the assailant. <u>See</u> <u>Crain</u>, 641 So.2d at 1189.

A criminal attack is foreseeable if the business owner had "actual or constructive knowledge that an atmosphere of violence exists [on the premises]." <u>Grisham v. John Q. Long V.F.W. Post</u>, 519 So.2d 413, 416-17 (Miss. 1988). In making this determination, one must consider (1) "prior similar incidents" of crime on the business premises, and (2) "the amount and type of criminal activity" in the vicinity of the defendant's business. <u>Crain</u>, 641 So.2d at 1191-92; <u>see also</u> <u>Lyle v. Mladinich</u>, 584 So.2d 397, 399 (Miss. 1991).

As the Mississippi Court of Appeals recently pointed out, the "prior similar incidents" prong is not offense-specific. <u>See</u> <u>Am. Nat'l Ins. Co. v. Hogue</u>, 749 So.2d 1254, 1260 (Miss. App. 2000).

4

The court of appeals upheld a jury's finding that an attempted kidnaping in the parking lot of a shopping mall was reasonably foreseeable even though there were no prior incidents of kidnaping on the premises. The court noted that in one year prior to the assault, the city police were called to investigate "thirteen auto thefts, two strong arm robberies and one robbery with a knife, one rape, and two assaults with injuries" in the mall parking lot. Id. Although no kidnapings were reported, the frequency and nature of the service calls indicated a reasonable likelihood of "assaultive conduct" on the premises. Id. The court thus held that, given the high rate of "assaultive" crimes at the mall and the fact that the mall employed only one security guard to patrol a 3000-space parking lot during the Christmas shopping season, the attempted kidnaping and beating of the plaintiff could have been considered reasonably foreseeable. Id. at 1259-60.

In the light of the relevant substantive law, the question is whether the Tillmans' evidence of (1) prior similar criminal incidents on the premises and (2) the amount and type of criminal activity in the neighborhood is sufficient to allow a reasonable jury to conclude that Wendy's should have foreseen the midday assault on Mrs. Tillman.

The Tillmans point to four categories of evidence suggesting that the assault was foreseeable: (1) statistical evidence that the restaurant was located in a high crime area; (2) affidavits of two store employees who stated that the store had a problem with vagrants and aggressive panhandlers; (3) expert testimony showing a correlation between vagrancy and the incidence of crime in the area; and (4) a compilation of police incident reports for disturbances in and around the restaurant. We examine each category of evidence in turn.

First, much of the statistical evidence is immaterial. The Mississippi Supreme Court has explained that evidence of criminal activity off the premises is relevant only if the crimes were committed in the business's "vicinity" or "surrounding neighborhood." Crain, 641 So.2d at 1192. The statistical evidence presented here is broken down by precinct and beat. Because there are only four precincts and thirty-eight beats within the entire city of Jackson, most of the documented criminal activity did not occur within the "surrounding neighborhood" of the restaurant. Thus, the fact that the Wendy's restaurant was located in a precinct and beat with relatively high rates of crime is not probative and hence not material to whether the attack on Mrs. Tillman was foreseeable.[1]

---

[1]When the statistics are broken down into "reporting zones" within each beat, however, a more accurate picture of criminal

Second, the employees' affidavits are not sufficient to create a genuine issue of material fact.[2] The affidavits contain basically scripted language: "During the time of my employment at [Wendy's], there has been a constant problem with vagrants harassing and threatening customers inside and outside the restaurant including before April 1, 1997. Customers frequently complain about being approached by vagrants, panhandling and harassing them for money." The affiants further stated that if a vagrant entered the restaurant and bothered the customers, the manager would approach the vagrant and ask him to leave; and on a few occasions, restaurant employees called the police, who then asked the vagrant to leave. These affidavits, which are couched in very general terms, undoubtedly suggest that vagrants were a nuisance, but there is no indication that any of these encounters turned violent or rose to the level of simple assault. Cf. MISS. CODE ANN. § 97-3-7(1) (2000). For that reason, these affidavits do not speak to, and thus are not material to, the question of whether prior similar criminal incidents had occurred on the premises.

Third, the Tillmans' "expert testimony" on the safety risk posed by vagrants is not sufficient to create a genuine issue of

_____

activity in the vicinity emerges. That information will be considered below.

[2]The fact that the employees signed subsequent affidavits recanting their earlier testimony is not relevant. For the purposes of summary judgment, we assume that the original affidavits were completely truthful and accurate.

material fact. One expert testified (based solely on his own observation and experience) that "bums can tend to be unstable, that they can have mental deficiencies, that they can be addicts of one sort or another, that they can be alcoholics, and that they can be irrational. It's my opinion that such people pose a potential danger to the public." While not questioning the accuracy of this assessment, these general and banal observations tell us very little that fits into the two-part test for foreseeability that was articulated in Grisham and Crain. Therefore, this expert's opinion on the possible danger posed by vagrants, who indeed regularly patronize many businesses without incident, is not probative on the ultimate question of whether a reasonable business owner under these circumstances would have foreseen the criminal assault on Mrs. Tillman.

Fourth, the Tillmans presented a compilation of data relating to criminal activity in the vicinity of the Wendy's restaurant. The Tillmans rely on two types of information: (1) records of "calls for service" and (2) incident reports, which are produced when the police have confirmed that a criminal offense has actually occurred. (As the Tillmans' expert admitted, incident reports are a better indicator of the level of crime in an area.) The evidence may be summarized as follows: (1) In the five years covered by the incident report data, there is not a single report of a crime being committed on the restaurant's premises, either inside the restaurant or in the parking lot. (2) In the three years covered by

the "call for service" records, the police were called to the restaurant's premises nine times. (3) The nine calls for service involved complaints of vagrants harassing customers (three times), approaching cars in the parking lot (twice), spitting on a customer, "causing a disturbance" within the restaurant, and "trying to get money"; the ninth service call involved a drive-thru customer who was seen with a gun. (4) Of the nine calls for police service at Wendy's, only one occurred during the daylight hours. (5) Over this same three-year period, there were 386 calls for service at several fast-food restaurants, gas stations, and convenience stores in the area, and most of these complaints were minor: fights in parking lots, aggressive panhandlers, public drunkenness, and so on. (6) From 1992 to 1997, there were incident reports of ten robberies, seven assaults, two kidnapings, one carjacking, and one rape in the area.

Applying Mississippi's premises liability law to the facts summarized in the preceding paragraph, we conclude that summary judgment is appropriate. The evidence presented by the Tillmans is not sufficient to permit a reasonable finder of fact to conclude that it was reasonably foreseeable that a vagrant would enter the Wendy's restaurant and, in midday, assault a customer and steal her purse.

In no relevant way can this case be distinguished from Crain, in which the Mississippi Supreme Court held that an assault on a patron in a dark parking lot was not foreseeable. The court noted

9

that (1) there were two confirmed crimes (both thefts) on the premises of the Moose Lodge within the year prior to the assault, but "no evidence of prior violent, unprovoked attacks"; and (2) there were only eleven violent crimes committed in the area within five years prior to the assault. Crain, 641 So.2d at 1192. To be sure, the Tillmans presented evidence of nine calls for police service, but (as explained above) not one of those calls qualifies as a prior similar criminal incident.

As the district court correctly observed, imposing liability on Wendy's would effectively create a standard of strict liability on all businesses located in neighborhoods with relatively high crime rates. The Mississippi Supreme Court has unequivocally stated that Mississippi law does not impose such a burden. Crain, 641 So.2d at 1189, 1191-92 (emphasizing that a business owner is not an insurer of his guests' safety); Kelly v. Retzer & Retzer, Inc., 417 So.2d 556, 561, 563 (Miss. 1982)("[T]he responsibility of enforcing the law is on the government chosen by the people of the area and does not necessarily rest upon the business involved.").

## III

For the reasons set forth above, the summary judgment for Wendy's is

A F F I R M E D .