¶ 28. I concur with the majority's opinion to affirm the trial court on all issues as to the husband, Larry Locke. However, I respectfully dissent from the majority's conclusion that the trial court properly denied Purdon's motion for directed verdict as to Rita Locke's claim for loss of consortium for failing to prove a decline in the relationship and any damages to the relationship.
 ¶ 29. The trial court granted Rita Locke's jury instruction for loss of consortium, which authorized the jury to award damages on proof of:
 a. Any loss of society, companionship, love, and affection;
 b. Any loss of aide, services, and physical assistance provided by the husband;
 c. Any loss of participation together in the activities, duties, and responsibilities of making a home.
 ¶ 30. On direct examination, Rita Locke gave very generalized responses to questions concerning these elements, as follows:
 Q. After he had gotten home after this happened over at Baptist, how was he then?
 A. He would get really frustrated because he wasn't able to do what he had been doing, and he just didn't know how to deal with that. He would get really upset with us, and we didn't understand why.
 Q. All right. Did you observe any changes in his emotions?
 A. Yeah. He would get really — I don't know how you would say it, just really loud to us and just get really upset, and I could see that he would have tears, and then he would just go into the room, his room, in our room.
 ****** Q. And during that time frame, did it have any effect on your relationship with him; that is, the way the two of you got along with each other?
 A. Yes, it did. He just — he became, like, I don't know, angry and bitter and just kind of pushed us to the side, like. He didn't care to be *Page 382 
around anybody and just stayed — tried to stay a lot to himself.
 ¶ 31. I respectfully disagree with the majority's assertion that this evidence "evinces a serious decline in the Lockes' relationship subsequent to the injury." The testimony presented by Rita Locke at trial describes the effect of her husband's injuries on his emotions and temperament, but it did not establish any of the crucial elements of the damage she suffered personally as a result of his injuries, such as mental anguish, lack of sexual and intimate relations, and strains on homemaking responsibilities after her husband's injury.
 ¶ 32. In loss of consortium cases the plaintiff must establish separate and distinct damages which resulted from injury to his or her spouse to receive compensation. In Alldread v. Bailey, 626 So.2d 99, 102
(Miss. 1993), this Court quoted Anderson v. Mutert, 619 S.W.2d 941, 945
(Mo.Ct.App. 1981), as follows:
 a cause of action accruing to a party for loss of consortium is separate and distinct from that party's spouse suffering personal injury. The spouse seeking compensation for loss of consortium must show that he or she suffered damages arising out of the other's injuries. . . .
 ¶ 33. On direct, Rita Locke did not provide any information concerning specific damages she suffered, or specific incidents in which her conjugal rights were destroyed as a result of her husband's injury. To the contrary, on cross-examination, she characterized her husband's detachment by stating that prior to his injury "he was always really strong. He just kept everything to himself."
 ¶ 34. In the absence of sufficient evidence of damages, I would reverse and render in favor of Purdon as to Rita Locke's loss of consortium claim.
 ¶ 35. For these reasons, I respectfully concur in part and dissent in part.
MILLS AND COBB, JJ., JOIN THIS OPINION. SMITH, J. JOINS IN PART.